IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SETH BRADLEY SMITH**                                         **PETITIONER**
**ADC #175120**

**VS.**                        **NO. 4:23-CV-01101-KGB-ERE**

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction**                            **RESPONDENT**

## RECOMMENDED DISPOSITION

This Recommendation has been sent to United States Chief District Judge
Kristine G. Baker. You may file objections if you disagree with the findings or
conclusions set out in the Recommendation. Objections should be specific and
include the factual or legal basis for the objection.

Objections must be filed within fourteen days. If you do not object, you risk
waiving the right to appeal questions of fact, and Chief Judge Baker can adopt this
Recommendation without independently reviewing the record.

## I.    INTRODUCTION

Seth Bradley Smith, an Arkansas Division of Correction inmate, filed a
petition for writ of habeas corpus under 28 U.S.C. § 2254, through counsel. *Doc. 1*.
For reasons that follow, the Court recommends that Mr. Smith's petition be
dismissed with prejudice.

## II.   FACTUAL BACKGROUND

On November 18, 2019, a Craighead County, Arkansas jury convicted Mr. Smith of the second-degree murder of his four-month-old son, AS.  *Doc 5-3 at 98*. He was sentenced to eighteen years in prison. *Id.*

The evidence at trial showed the following. On October 3, 2017, AS's mother Ruby Keller ("Ruby") and her sister, Sondra Keller ("Sondra"), dropped AS off at his babysitter's house before they continued to work.  *Doc. 5-3 at 474*.  At that time, Mr. Smith and Ruby were engaged and lived in an apartment with AS and Sondra. *Id. at 473-474.* That morning, as usual, Ruby and Sondra dropped AS off at his babysitter's house on their way to work, and Sondra sat in the back seat with AS and held his hand. *Id. at 476-477.* Sondra testified that AS did not appear ill and had no prior health issues. *Id.*

AS's babysitter, Tammy Washington, testified that AS was happy as usual that day while in her care. She recalled that he was not sick or experiencing any problems, and she did not see any bruises or injuries. *Id. at 326*. Ms. Washington testified that Mr. Smith picked AS up between 4:30 and 5:00 p.m. *Id.*

Mr. Smith's mother, Michelle Smith ("Mrs. Smith"), went to her son's apartment before he arrived home with AS at approximately 5:00 p.m. *Id. at 791.* Mrs. Smith testified that AS was fussy when Mr. Smith brought him in, which she

attributed to "shots" he had received the week before.[1] *Id. at 795*. Mrs. Smith took care of AS while her son showered, and she gave AS Tylenol to calm him. *Id*. Mrs. Smith testified that AS was a little better when she left the apartment at approximately 6:00 p.m. *Id*.

At 6:14 p.m., Mr. Smith called 911 and said: "Yes, there's something wrong with my kid. He was crying and crying and now he's not really moving. He's barely breathing." *Id. at 341*.

The first responder, Bono Fire Department Captain Nicholas McGowan, arrived at Mr. Smith's apartment complex at 6:17 p.m. and saw Mr. Smith outside holding AS, who was unclothed and grayish blue. *Id. at 351-352.* Captain McGowan called dispatch and requested assistance, took AS inside, and laid him on a couch. *Id. 353-354*.

After assessing AS and finding no signs of life, Captain McGowan began chest compressions, which caused dark brown liquid to come from AS's mouth. *Id. at 354*.  Captain McGowan cleared AS's mouth and noticed a bruise around his left ear, and he continued CPR, with no success. *Id. at 354-355*.

---

[1] AS's pediatrician, Dr. Natasha Wantulok, testified that AS received standard two- and four-month vaccinations. *Doc.5-3 at 295, 297.*  She stated that Ruby brought AS back to her clinic 24 to 48 hours after his two-month vaccination because he was fussy but had no fever or other symptoms.  *Id. at 301-302*. Dr. Wantulok explained that AS's behavior was normal. Dr. Wantulok administered AS's four-month vaccinations with no issues on September 27, 2017, six days before he died. *Id*.

Next, Emergency Medical Technicians ("EMTs") Howard Rae and Michael Harris and Bono Police Officer Jason Fraser arrived on scene. The EMTs took AS to an ambulance, where they continued CPR and performed mechanical ventilation, without success. *Id. at 385-388.* While working on AS, EMTs noticed a contusion on his left ear and clear liquid in his right ear. *Id. at 394-395.*

After EMTs took AS out of the apartment and to the ambulance, Officer Fraser, wearing a body camera, asked Mr. Smith what had happened. *Id at 459-461.* The jury heard Mr. Smith's recorded response: "I mean, he was crying and crying, and he was acting like he couldn't breathe. I'm holding and shaking him and I'm just like – and I'm patting and finally he's just – he kind of just goes limp." *Id. at 461.*

When asked where in the apartment these events took place, Mr. Smith answered that AS was "perfectly fine and laying on his stomach" on a couch and he "was trying to calm him down[,] and then we were coming in here and it was just– and I'm still shaking him." *Id. at 162.*

The EMTs transported AS to the emergency room at St. Bernards Medical Center in Jonesboro. Dr. Mickey Bryan Deel assessed AS and found no pulse; swelling on the left side of AS's face; deviation of his left eye; fullness, and beginnings of bruising on the left side of the chin; and discoloration on his back. *Id. at 422-425.* Equipment monitoring AS's heart showed disorganized electrical

activity, but Dr. Deel testified that AS was basically dead when he came into the emergency room. *Id. at 428*.

Based on his observations, Dr. Deel suspected that AS suffered respiratory arrest caused by trauma to his head, and he called the police and the child abuse hotline, which prompted an autopsy. *Id. at 425, 430.*

On October 9, 2017, Ron Richardson, who worked for the Criminal Investigation Division of the Craighead County Sheriff's Office, interviewed Mr. Smith at the Sheriff's Office in a room equipped with an audio/video recording system. *Doc. 5-3 at 487-493.* Before the interview, Investigator Richardson read Mr. Smith his *Miranda* rights from a form, which Mr. Smith signed. *Id. at 492-493.*

Over Mr. Smith's objection, the jury watched the video recording of Mr. Smith's interview with Investigator Richardson.  At the beginning of the interview, Mr. Smith denied doing anything that could have harmed AS. He stated that AS was fine when he picked him up from the babysitter (*Id. at 513*) and when Mrs. Smith left the apartment at approximately 5:45 p.m., but he started crying a while later. *Id. at 508*. He explained that to calm him, he took AS to the bedroom, removed his shirt, laid him on the bed, and drew him a bath. *Id. at 509*. Mr. Smith stated that when he returned to the bedroom to take AS to his bath, the baby, who had been crying ceaselessly, suddenly went limp, as though he were exhausted. *Id*. Mr. Smith recalled that he picked AS up and realized something was wrong. *Id. at 509*. He told

Investigator Richardson that he cradled AS and rocked him, and called Ruby, who told him to call 911. *Id.*

Mr. Smith told Investigator Richardson that AS was "perfectly fine" when he removed his shirt, and he didn't know why he suddenly when limp. *Id. at 518.* Investigator Richardson suggested that AS's crying was getting on Mr. Smith's nerves, and he shook AS before he laid him on the bed. *Id. at 519.* Investigator Richardson told Mr. Smith that AS died from shaken baby syndrome, that someone shook him so hard that it killed him. *Id.* He stated, "The only folks I've got to look at here . . . is you and your momma. One of you lost your cool and shook him. I'm not saying you meant to hurt him. I think it was you." *Id.*

Mr. Smith acknowledged: "I know Ruby said sometimes when I was holding him and trying to put him to sleep that maybe I was a little rough." *Id at 520-521.* Mr. Smith admitted that he lost his cool, just for a second, and shook AS for three or four seconds. *Id at 527-530, 540-541* Mr. Smith also acknowledged that he held AS by his body, under his arms, indicating that he did not support the baby's head when he shook him. *Id. at 525, 540-541.*

The jury viewed, over Mr. Smith's objection, a recording of Mr. Smith speaking with Ruby in the interview room. Investigator Richardson testified that after he interviewed Mr. Smith, he placed him under arrest and another officer took Mr. Smith away while Investigator Richardson interviewed Ruby. After that

interview concluded, at the request of Mr. Smith and Ruby, Investigator Richardson allowed the couple to visit in the interview room, and their conversation was recorded. Among other things, Mr. Smith told Ruby that "he didn't mean to." Ruby responded, "Now, our son is gone because of you," and Mr. Smith replied, "I know it's because of me." *Id. at 563.*

After AJ's death, Ruby and Mr. Smith parted ways temporarily, but they had reunited by the time of his murder trial. *Id. at 479.* Sondra testified that in 2017, while Mr. Smith and Ruby were still apart, he admitted to Sondra that he shook AS, and he attempted to demonstrate what he did. She testified: "He placed his right hand on my left arm and his left hand on my right arm, and he shook me . . . ."[2]

Dr. Charles Paul Kokes, the Chief Medical Examiner at the Arkansas State Crime Laboratory, testified that based on his review of AS's autopsy report, autopsy photographs, medical records, and investigative reports, he concluded that AS died from traumatic brain injuries, which included bleeding around the brain, optic nerves, and retinas. *Id. at 577, 586-587.* In addition, Dr. Kokes noted that AS had areas of hemorrhage and bruising on both sides of his tongue and contusions on his skin. *Id. at 587.*

---

[2] *Doc. 5-3 at 479-480.* Sondra testified that she reported Mr. Smith's statements to law enforcement and her sister, but she did not want to testify because her relationship with her sister would be permanently damaged. *Doc. 5-3 at 480-481.*

Dr. Kokes explained the content of several autopsy photographs shown to the jury. For example, he testified that dark areas in a photo of AS's brain showed areas of bleeding and blood pooling. *Id. at 597*. In addition, he pointed out faint bruises appearing on AS's arms, back, and neck and explained that the bruises were examined microscopically and determined to be fresh. *Id. at 597-605*.

Based on his review of AS's entire casefile, including but not limited to the autopsy report, Dr. Kokes prepared a written opinion, which was admitted at Mr. Smith's trial. *Id. at 584.* That detailed opinion concluded:

> In summary, the findings in this case clearly support traumatic brain injury as the primary cause of death. The findings documented in the autopsy report are typical of those seen in cases of fatal, non-accidental head trauma involving infants. The neck contusions/intramuscular hemorrhage are contributory cases. These injuries, along with the other injuries described above, do show that they were deliberately inflicted and inconsistent with any reasonable accidental scenario.

*Doc. 5-5 at 130*.

## III.   PROCEDURAL BACKGROUND

Mr. Smith raised three points on direct appeal: (1) the trial court erred by denying his motion to suppress his incriminating statements, in violation of his privilege against self-incrimination (*Doc. 5-7 at 12-15*); (2) the trial court erred by permitting the State to introduce information about the autopsy report, through Dr. Kokes, in violation of his right to confront witnesses (*Id. at 15-17*); and (3) the evidence presented was insufficient to support his conviction. *Id. at 17-19*.

The Arkansas Court of Appeals rejected points one and two on the merits and declined to entertain the third on the ground that Mr. Smith failed to preserve it for appellate review. *Smith v. Arkansas*, 2021 Ark. App. 255 (2021) ("*Smith I*").  Mr. Smith filed a petition for rehearing (*Doc. 5-9 at 1-7*), followed by a petition for review in the Arkansas Supreme Court (*Id. at 15-18*), and both were denied. *Id. at 14, 30.*

Next, Mr. Smith filed a petition a petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure, reasserting the points he made on direct appeal and claiming ineffective assistance of trial counsel for failure to preserve his insufficiency of evidence claim. *Doc. 5-11 at 51-56*. The trial court denied the petition without a hearing on grounds that: (1) issues decided on appeal are not cognizable on postconviction review; and (2) Mr. Smith's ineffective assistance claim was without merit. *Id. at 72-78.*

On February 15, 2023, the Arkansas Court of Appeals denied Mr. Smith's postconviction appeal, *Smith v. State*, 660 S.W.3d 622, 623, 2023 Ark. App. 57, 1 (2023) ("*Smith II*"), and on April 20, 2023, it denied his petition for review. *Doc. 5-14 at 9.*

On November 20, 2023, Mr. Smith filed, through counsel, the § 2254 petition now before the Court, asserting the same claims he presented to the Arkansas Court of Appeals on direct appeal: (1) the State presented insufficient evidence to support

his conviction (*Doc. 1 at 5-6*); (2) the trial court erred by denying his motion to suppress inculpatory statements (*Id. at 7-8*); and (3) the trial court erred by permitting the State to present evidence about the content of AS's autopsy report without calling as a witness the person who performed the autopsy, in violation of his right to confront witnesses against him. *Id. at 8-9*.

On December 21, 2023, Respondent filed a response (*Doc. 5*) seeking dismissal of the amended petition on grounds that: (1) Mr. Smith's insufficient evidence claim (Claim 1) is procedurally defaulted; (2) federal habeas relief is precluded under 28 U.S.C. § 2254(d)[3] because the Arkansas Court of Appeals reasonably adjudicated each of Mr. Smith's claims (Claims 1, 2, and 3) on the merits; and (3) any error with respect to the admission of Mr. Smith's inculpatory statements (Claim 2) and information contained in the autopsy report (Claim 3) was harmless. *Id. at 37-39*.

On January 12, 2024, Mr. Smith filed a reply addressing Respondent's arguments. *Doc. 7*.

---

[3] This provision mandates deferential federal habeas review when reviewing claims resolved on the merits in state court. *See* discussion *infra*-Section IV.B.

## IV.   DISCUSSION

### A.   Claim 1 is Procedurally Defaulted

Mr. Smith asserts that his conviction rests on insufficient evidence because the State failed to prove that he knowingly caused the death of his son under circumstances manifesting an extreme indifference to the value of human life.[4]  Mr. Smith presented the same argument on direct appeal, and the Arkansas Court of Appeals held that Mr. Smith failed to preserve the issue for appellate review by seeking a directed verdict in the manner required under Rule 33.1(a) of the Arkansas Rules of Criminal Procedure.

In Arkansas, a motion for a directed verdict is treated as a challenge to the sufficiency of evidence, and Rule 33.1(a) requires that the motion "be made at the close of the evidence offered by the prosecution and at the close of all evidence [, and] state the specific grounds therefore." The failure to challenge the sufficiency of the evidence at the times and in the manner prescribed by Rule 33.1(a) "will constitute waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment."  Ark. R. Crim. P. 33.1(c).

---

[4] In Arkansas, a person commits second-degree murder if: "(1) The person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or (2) With the purpose of causing serious physical injury to another person, the person causes the death of any person." Ark. Code Ann. § 5-10-103.

It is undisputed that Mr. Smith's trial attorney moved for a directed verdict at the required times, but his arguments were general and failed to identify an element of second-degree murder where the evidence fell short. *Doc. 5-3 at 778, 840*. Instead, counsel renewed motions to suppress Mr. Smith's inculpatory statements and Dr. Kokes' testimony about the autopsy report, stating, "and just in general the lack of the sufficiency of the evidence, particularly if those items had been excluded." *Id. at 840*.

Neither the trial court nor the prosecution raised the lack of specificity in the content of Mr. Smith's motion. *Id. at 778*, *840*. Instead, the trial court denied the motion on the merits, stating: "[T]he defendant's testimony, the child's aunt Sondra Keller, and the statements the defendant made on the video, and then, of course, the autopsy report reflects that the State has certainly made a prima facie showing sufficient to get past a motion for directed verdict." *Id. at 779-780* (denying motion for directed verdict); *id. at 840* (reaffirming denial of motion for directed verdict after State's evidence); *id. at 857* (denying renewed motion for a directed verdict at the close of evidence for reasons previously stated).

On appeal, the Arkansas Supreme Court held: "Smith never argued to the circuit court that the State had failed to prove he acted knowingly, so we are precluded from addressing that argument now." *Smith I,* 2021 Ark. App. 255 at 5 (2021).

Respondent rightly asserts that Claim 1 is procedurally defaulted. "A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (citing *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002)). "[A] state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice[5] or actual innocence[6] standards." *Id*. (citing *Murray v. Carrier*, 477 U.S. 478, 493–96 (1986)).

Mr. Smith challenges the adequacy of Rule 33.1, arguing that it imposes onerous standards that unconstitutionally restrict "his fundamental right to a directed

---

[5] Cause for procedural default must be an external impediment that prevented the petitioner from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, (1986). To demonstrate prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions . . . [such that he] was denied fundamental fairness at trial." *Id*. at 494 (internal quotation and punctuation omitted).

[6] The Eighth Circuit has instructed that a gateway actual innocence claim, permitting consideration of a procedurally defaulted claim, must satisfy a two-part test: "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial." *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). "The evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine v. Bowersox*, 128 F.3d 1222, 1230 (8th Cir. 1997). "Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Armine*, 238 F.3d at 1023 (quoting *Schlup*, 513 U.S. at 327)).

verdict of acquittal in a case where there was a lack of proof on an essential element of the crime charged." *Doc. 7 at 3*. The argument has no merit.

First, Arkansas appellate courts adhere to a strict interpretation of Rule 33.1's specificity requirement and consistently hold that a claim asserting insufficient evidence is not preserved unless the appellant made a clear and specific motion for a directed verdict, stating the precise element of the crime that the prosecution failed to prove. *Burns v. State*, 668 S.W.3d 566, 568, 2023 Ark. App. 309, 8 (2023) ("Our appellate courts have been steadfast in our holdings that we will not address the merits of an appellant's insufficiency argument when the directed-verdict motion is not specific."); *Gillard v. State*, 270 S.W.3d 836, 839, 372 Ark. 98, 102–03 (2008) (noting that Arkansas "case law has established that Rule 33.1 must be strictly construed" and unpreserved arguments are considered only under special circumstances, such as cases involving the death penalty).  There is no question that Rule 33.1's specificity requirement was "firmly established and regularly followed" by the time of Mr. Smith's trial. *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (explaining that only a "firmly established and regularly followed state practice" can prevent review of a federal claim).

Second, strict compliance with Rule 33.1's specificity requirement serves legitimate purposes. The Arkansas Supreme Court has explained: "The reason underlying our requirement that specific grounds be stated and that the absent proof

be pinpointed is that it gives the trial court the option of either granting the motion, or, if justice requires, allowing the State to reopen its case and supply the missing proof." *Holt v. State*, 384 S.W.3d 498, 504, 2011 Ark. 391, 7 (2011) (citing *Pratt v. State,* 359 Ark. 16, 194 S.W.3d 183 (2004)).

Third, Mr. Smith fails to provide any basis to find that application of Rule 33.1 in his case was particularly onerous or deprived him of a constitutional right. Absent exceptional circumstances not present here,[7] "federal courts should not consider whether the state court *properly* applied its default rule to the claim; federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004).

---

[7] In *Lee v. Kemna*, 534 U.S. 362 (2002), the Supreme Court held that the combined effect of several circumstances placed the case within the "small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim." *Id.* at 381. Lee's alibi was his sole defense to first degree murder, and he asked for an overnight continuance when his witnesses, all family members, disappeared from the courthouse. The trial court denied the motion, citing an upcoming trial and the judge's assessment that Lee's family had abandoned him. "The trial resumed without pause, no alibi witness testified, and the jury found Lee guilty as charged." *Id. at 366*.

On direct review, Lee challenged the denial of a continuance, but the state court of appeals affirmed on the ground not relied on by the trial court: that his motion for a continuance was procedurally defective under state rules. On federal habeas review, Lee argued that denial of an overnight continuance violated his right to due process. The district court rejected the claim based on an adequate and independent state-law procedural ground, and the Eighth Circuit affirmed. *Lee v. Kemna*, 213 F.3d 1037 (8th Cir. 2000).

The Supreme Court vacated and remanded for consideration of Lee's due process claim on the merits, noting that no state rule demanded strict compliance with procedure under the urgent circumstances presented in Lee's case and that given the trial court's stated reasons for denying a continuance, compliance with procedure would have served no purpose. Unlike the facts in *Lee*, Mr. Smith was not faced with an urgent situation that prevented compliance with Rule 33.1. In addition, the trial court denied Mr. Smith's motion for reasons that counsel could have anticipated, and compliance with Rule 33.1's specificity requirement served a valid purpose.

The Arkansas Court of Appeals resolved Mr. Smith's insufficiency of evidence claim on an adequate and independent state ground, and the claim is therefore procedurally defaulted. Mr. Smith offers nothing to support a finding of cause and prejudice to excuse his default. Nor does he provide new, reliable evidence of actual innocence to justify a merits review. Claim 1 should be dismissed, with prejudice.

### B.    Alternatively, the Arkansas Court of Appeals' Adjudication of Claim 1 is Due Deference Under 28 U.S.C. § 2254(d)

On postconviction review, the Arkansas Court of Appeals adjudicated Mr. Smith's claim that his trial attorney provided ineffective assistance by failing to preserve his insufficiency-of-the-evidence claim.[8] Respondent argues that adjudication of Mr. Smith's ineffective assistance claim incorporated an adjudication of the underlying, insufficiency-of-the-evidence claim, which precludes federal habeas relief under 28 U.S.C. § 2254(d). *Doc. 5 at 25-29*.

Section 2254(d) provides that when a state prisoner's federal claim has been adjudicated on the merits in state court,[9] a federal court "shall not" grant an

---

[8] Mr. Smith does not reassert the claim here, either as a stand-alone claim or as cause to excuse his procedural default of Claim 1.

[9] While there is no Eighth Circuit case specifically addressing the issue, the Seventh, Sixth, and Third Circuits have held that when a state court addresses a state prisoner's federal claim in the process of resolving another claim or issue, the federal claim is deemed adjudicated on the merits for purposes of § 2254(d). See *Smith v. Warden, Toledo Correctional Institution*, No. 20-3472, 2022 WL 601860, at *4 (6th Cir. March 1, 2022) ("Nothing requires a state court to conduct its analysis under the heading of a specific federal constitutional right to adjudicate it on the

application for habeas relief unless the state courts' adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court;[10] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[11] "The question . . . is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—'a substantially higher threshold' for a prisoner to meet." *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 (2022) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

---

merits."); *Bennett v. Brewer*, 940 F.3d 279, 290–91 (6th Cir. 2019) (holding that state court's rejection of ineffective assistance of trial counsel claim for lack of prejudice also served as a merits decision for an ineffective assistance of appellate counsel claim as to same underlying error); *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009) (holding that state court's evaluation of competency hearing in context of ineffective assistance claim effectively reached merits of related due process claim based on lack of competency hearing); *Albrecht v. Horn*, 485 F.3d 103, 116 (3d Cir. 2007) (holding that evaluation of constitutionality of sentencing instructions in the context of an ineffective assistance claim amounted to an adjudication on the merits of stand-alone claim on same issue under § 2254(d)).

[10] A state court decision is "contrary to" clearly established federal law if the state court either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

[11] The state court's factual findings are subject to a deferential standard of review and presumed correct unless the petitioner can rebut those findings through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also *James v. Bowersox*, 187 F.3d 866, 871 (8th Cir. 1999).

An attorney does not render ineffective assistance by failing to raise or preserve a meritless argument or claim. *Thai v. Mapes*, 412 F.3d 970, 979 (8th Cir. 2005). Accordingly, in assessing Mr. Smith's ineffective assistance claim, the Arkansas Court of Appeals evaluated the merits of his underlying, insufficiency of evidence claim applying substantial evidence standard, stating:

> We will affirm a judgment of conviction if substantial evidence, direct or circumstantial, exists to support it. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture.  Circumstantial evidence, in particular, is substantial when it excludes every reasonable hypothesis consistent with innocence; whether it does so is usually a jury question.

*Smith II*, 2023 Ark. App. 57 at 4–5.

The substantial evidence standard employed by the state court arguably is more favorable to Mr. Smith than the standard endorsed by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

The court of appeals summarized evidence supporting that Mr. Smith acted knowingly, as required to support a conviction for second-degree murder:

> Smith stated multiple times that he had not meant to hurt his son, but he also admitted that he had shaken the baby without holding his head. He did not alert the paramedic at the scene to the possible cause of the baby's injuries. The baby sustained a traumatic brain injury that was

"deliberately inflicted." In his police interview, Smith first told the detective that the baby had been crying and suddenly went limp, and he denied shaking the baby to stop the crying. But Smith ultimately admitted to holding the baby around his torso and shaking him back and forth. Smith's failure to timely disclose the shaking incident could be viewed by the jury as an attempt to cover up his connection to the crime.

*Smith II*, 2023 Ark. App. 57, 14 (citing *Terrell v. State*, 342 Ark. 208, 27 S.W.3d 423 (2000) (jury could have properly considered evidence of cover-up as proof of requisite mental state)). After reviewing the evidence in detail and carefully considering and rejecting Mr. Smith's arguments, the Arkansas Court of Appeals concluded: "Viewing the light in the evidence most favorable to the State, we hold the evidence is sufficient to support a conviction and that counsel was not ineffective to preserve the sufficiency-of-the-evidence issue for appeal." *Id*., 2023 Ark. App. 57, 14–15.

The Arkansas Court of Appeal's rejection of Mr. Smith's claim challenging the sufficiency of the evidence, though asserted in conjunction with an ineffective assistance of counsel claim, is entitled to deference under § 2254(d). For this alternative reason, Claim 1 should be dismissed, with prejudice.

### C.    The Arkansas Court of Appeals' Adjudication of Claim 2 is Due Deference Under 28 U.S.C. § 2254(d)

Mr. Smith claims that the inculpatory statements he made at the Sheriff's Office on October 9, 2017, both during his interview with Investigator Richardson and after, when he talked to Ruby, were the product of coercion. The trial court

denied his motion to suppress the statements, and the Arkansas Court of Appeals affirmed that decision on direct appeal.

Mr. Smith has never denied that he voluntarily waived his *Miranda* rights before Investigator Richardson asked him questions, but he argues that his statements were involuntary because Investigator Richardson: (1) interviewed him when he was most vulnerable, immediately after AS's death; (2) lured him to the interview by telling him that he needed to "finish some paperwork," and it was "no big deal;" and (3) coerced him into making a false admission by positing that either he or his mother shook AS and caused his death. *Doc. 7 at 7* (incorporating arguments and authority presented on direct appeal). Mr. Smith also argues that incriminating statements he made to Ruby after his interview with Investigator Richardson were the result of an interrogation practice that violated the Due Process Clause. Mr. Smith presented the same arguments at trial (*Doc. 5-3 at 200-202*) and on direct appeal (*Doc. 5-7 at 12-15*), and the state courts rejected each one. *Smith I,* 2021 Ark. App. 255 at 5-7.

In keeping with Supreme Court's involuntary-confession jurisprudence, the Arkansas Court of Appeals noted that a custodial statement is presumptively involuntary, and the State must prove, by a preponderance of the evidence, that it was given voluntarily. *Id*. at 7; *accord Colorado v. Connelly*, 479 U.S. 157, 168 1986); *Lego v. Twomey,* 404 U.S. 477, 489 (1972); *Miranda v. Arizona*, 384 U.S.

436, 464-467 (1966). The test for voluntariness asks: "Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). In applying this test, a court must consider the totality of the circumstances—both the characteristics of the accused and the details of the interrogation. *Id*.

In concluding that Mr. Smith's statements were voluntary, the court of appeals noted that Investigator Richardson did not mislead him about the purpose of the interview by telling him it was just to finish paperwork and was "no big deal." *Smith I*, 2021 Ark. App. at 4. The court of appeals noted that the interview took place six days after AS's death, not during the immediate aftermath, and before asking any questions, Investigator Richardson explained: "Whenever there's a death like this, you know, we always, the sheriff's office, comes in and does a follow-up, final, formal investigation, what not . . . into the death and then the things of that nature." *Doc. 5-3 at 495*. The court of appeals accurately observed that Investigator Richardson made no threat, overt or otherwise, to prosecute Mr. Smith's mother, and made clear to Mr. Smith that he *did not* believe Mrs. Smith had harmed her grandson. The court of appeals noted: "The officer was simply stating a matter of fact: two

21

people had been with AS prior to his injuries, Smith and his mother. Therefore, one of them had inflicted the injuries." *Smith I*, 2021 Ark. App. at 8-9. Finally, the court of appeals rejected Mr. Smith's argument that his post-interview inculpatory statements to Ruby should have been suppressed, noting that he failed to cite any authority to support his position that his admissions to Ruby, made during a meeting that he had requested, were the product of coercive police tactics. *Id.* at 9.

"[T]he ultimate issue of 'voluntariness' is a legal question requiring independent federal determination," but "subsidiary factual questions, such as . . . whether in fact police engaged in the intimidation tactics alleged by the defendant, are entitled to the § 2254(d) presumption." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Here, the state court's finding that Mr. Smith was not subject to the coercive interview techniques alleged by Mr. Smith is entitled to a presumption of correctness unless Mr. Smith can rebut the presumption by "clear and convincing evidence," which he has failed to do. "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  Accordingly, the Court cannot find that the state court's ultimate holding on voluntariness was contrary to, or involved an unreasonable application of, clearly established federal law. Claim II should be dismissed, with prejudice.

### D.   The Arkansas Court of Appeals' Adjudication of Claim 3 is Due Deference Under 28 U.S.C. § 2254(d)

Mr. Smith claims that his right to confront witnesses was violated when the trial court permitted Dr. Kokes to testify about the content of AS's autopsy report, which was not introduced at trial. According to Mr. Smith, Dr. Kokes' testimony was tantamount to admitting the autopsy report into evidence, and because the medical examiner who performed the autopsy was not called as a witness, his right to confront witnesses was violated. *Doc. 7 at 9* (incorporating by reference arguments and authority presented on direct appeal).

The Arkansas Court of Appeals rejected this claim on direct appeal, holding that, as permitted by Rule 703 of the Arkansas Rules of Evidence, Dr. Kokes gave his expert analysis and opinion based on his review of the autopsy report, investigative reports submitted to the crime laboratory, medical records, and photographs and tissue slides taken at the autopsy. *Smith I*, 2021 Ark. App. 255 at 11. The state court distinguished Dr. Kokes' testimony from Supreme Court cases holding that attested, certified lab results signed by non-testifying analysts are testimonial in nature, thereby implicating the right of confrontation. *Id*. at 11–12 (citing *Crawford v. Washington*, 541 U.S. 36 (2004); *Bullcoming v. New Mexico*, 564 U.S. 647 (2011); and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009)).[12]  The

---

[12] In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court had held that Confrontation Clause protections extend to all "testimonial statements." In *Melendez-Diaz*, 557 U.S. 305 (2009), the Court held that attested, certificates of substance analysis, specifically created

state court correctly noted that the Supreme Court has never held that autopsy reports fall into the "certificates of analysis" category. *Id.*

The state court's adjudication of Mr. Smith's Confrontation Clause claim was a reasonable application clearly established federal law. The Supreme Court has held that an expert witness may express an opinion based on facts discovered by another person as the basis for his own independent opinion without violating the Confrontation Clause. *Williams v. Illinois*, 567 U.S. 50, 57 (2012). Mr. Smith argues that the Arkansas Court of Appeals denied his Confrontation Clause claim based on an unreasonable determination that the autopsy report itself was not, for all practical purposes, admitted into evidence. He contends that Dr. Kokes' expert report merely recited findings from the autopsy report, and he acted as surrogate witness in place of the medical examiner who prepared it. However, the content of Dr. Kokes' testimony and his written report leave no doubt that he testified as to his own expert opinions after reviewing AS's entire case file.

Claim 3 should be dismissed, with prejudice.

---

for use at the defendant's trial, were "testimonial" for purposes of the Confrontation Clause. In *Bullcoming v. New Mexico*, 564 U.S. 637 (2011), the Court held that blood test results admitted in a DUI prosecution through a witness who did not conduct the test or sign the test result violated the defendant's confrontation rights.

**E.** **Alternatively, Claims 2 and 3 Fail Under Harmless-Error Analysis**

Constitutional trial errors, such as those asserted in Claims 2 and 3, are subject to harmless-error analysis, and habeas relief is proper only if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)); see also *Fry v. Pliler*, 551 U.S. 112 (2007) (requiring federal habeas courts to assess the impact of a constitutional error in a state-court criminal trial under the *Brecht* standard "whether or not the state appellate court recognized the error and reviewed it for harmlessness").

Evidence of Mr. Smith's incriminating statements to Investigator Richardson and Dr. Kokes' testimony about the autopsy report was cumulative of evidence that provided an independent basis for finding, beyond a reasonable doubt, that Mr. Smith knowingly caused the death of his son. Mr. Smith testified that AS was fine when Mrs. Smith left the apartment, about fifteen minutes before he called 911, and he admitted to a responding officer, and later to Ruby's sister, that he shook AS before he died. In addition, Dr. Deel, the attending emergency room physician who called the child abuse hotline, testified that AS's condition and injuries, which he described in detail, were consistent with traumatic head injury causing respiratory arrest and death.

Respondent correctly asserts that Claims 2 and 3 also fail because even if the

admission of Mr. Smith's incriminating statements to Investigator Richardson and Dr. Kokes' testimony about the autopsy report amounted to a violation of clearly established federal law, it did not rise to the level of prejudicial error required for federal habeas relief.

Claims 2 and 3 fail for this additional reason.

## V.     CONCLUSION

IT IS THEREFORE RECOMMENDED that:

1.     Petitioner Seth Bradley Smith's § 2254 Petition for Writ of Habeas Corpus (*Doc. 1*) be DISMISSED with prejudice.

2.     A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

Dated 11 April 2024.

_____
UNITED STATES MAGISTRATE JUDGE